HOOD, Judge.
This is a suit for damages instituted by the undivided owners of a large tract of land in Acadia Parish against Michigan Wisconsin Pipeline Company. Plaintiffs contend that defendant constructed a pipeline across six tracts or fields of rice farmland owned by them, and that as a result of that construction it has become necessary for them to relevel the entirety of each such tract, including the part which lies outside the right of way. They seek to recover the cost of this releveling. Judgment on the merits was rendered by the trial court in favor of plaintiffs, awarding them the full amount claimed, aijd defendant has appealed.
The principal question presented is: Did the construction of this pipeline so disturb *173 the surface of the land that it became necessary to relevel the whole of each tract traversed by the pipeline, including all of the acreage lying outside the right of way
On May 25, 1967, plaintiffs granted to defendant a right of way to construct a pipeline across their property, the right of way traversing six separate tracts or fields of rice land owned by them. These tracts of land varied in size, ranging from 14 to 65.6 acres in area, and the total acreage involved amounted to an aggregate of 226.3 acres. The right of way agreement provides that the grantee was to have a working area 100 feet wide, with the proposed pipeline as the center line, and that after construction was completed, the servitude granted was to revert to a permanent right of way 25 feet wide, with the pipeline being in the center. The right of way agreement also recites that a consideration of $336.00 was paid for that servitude, and that the grantee agrees:
“1. To restore to the condition in which found, all contour levees present in the tract through which the right of way herein granted passes, and off the right of way; and which are affected and/or destroyed.”
* * * * * *
“3. To build and provide all levees necessary along both sides of the right of way herein granted in order to retain the rice irrigation water now present or to be used on the tract of land through which this right of way passes, and thereafter to restore the land so used to the condition in which found.”
* * * * * *
“9. To restore to the condition in which found the land contained in the working area grant made herein and in the permanent right of way grant granted herein; as well as any damages off the right of way, including land leveling, both on and off the right of way.”
On the day the above mentioned right of way was granted, plaintiffs also executed two “advance releases” in favor of defendant. One recites that in consideration of the sum of $3024.00 paid to plaintiffs, they release defendant from all damages, except damages to livestock and crops, which may occur upon the right of way as a result of the construction of the pipeline. The other release recites that in consideration of $7040.00, plaintiffs release defendant from any further claims of damages to the land, crops, timber, fences and improvements resulting from the construction of the pipeline on this right of way. Each of these releases specifies that the release is restricted to damages “on the right of way,” and that it does not apply to “off the right of way” land leveling which may be made necessary.
The pipeline was constructed during the months of June and July, 1967. When the construction was completed defendant re-leveled the property included within the right of way, but it did not reconstruct and reconnect the rice levees which had been severed or destroyed.
Plaintiffs contend that in constructing this pipeline across these six tracts of rice farmland, the surface of each tract was disturbed to the extent that it became necessary to relevel the entire tract. They contend that the cost of releveling land for raising rice amounts to $25.00 per acre, and that the cost of releveling the entire 226.3 acres affected by the pipeline thus amounts to $5657.50. Defendant concedes that the construction of a pipeline disturbs the surface of land located within the right of way. It contends, however, that the area within the right of way can be and was restored to its former condition, and that plaintiffs have already granted a release for all damages which may be due for damages to the land on the right of way. It takes the position that the construction of the pipeline did not make it necessary to relevel any part of plaintiffs’ land lying outside of that right of way, and thus that plaintiffs are not entitled to recover.
A common and accepted practice in farming rice is to level the land and then *174 construct levees so that each levee will be located on and along a contour line which varies only about two inches in elevation from the bases of the levees which are on either side of it. A rice farmer usually rotates his crops so that after rice has been raised on a tract of land one year, the land is then permitted to lie idle or it is planted in wheat or soybeans the next crop season. Plaintiffs observed that practice generally, but they testified that “with this quota this year, it made us plant two years in a row on some pieces.” All witnesses apparently agree that the levees must be “knocked down” and that the land must be releveled when rice land is used for planting the interim crops of wheat or soybeans, and that the entire field must then be releveled and the levees must be rebuilt before the same land thereafter can be planted to rice.
In the instant suit, plaintiffs planted five of the six affected tracts of land to wheat or to soybeans during the 1968 crop season. The contour levees were knocked down on these tracts and the land was releveled before these interim crops were planted. There is nothing in the evidence to show that the construction of the pipeline made it necessary for plaintiffs to rotate these crops that year, or to change from rice to soybeans or wheat on those five tracts that crop season, and we conclude that that was done in accordance with their regular practice of rotating the crops on these tracts.
The releveling of these five tracts of land within a few months after the construction of the pipeline was completed, therefore, was done solely because of the need to rotate crops that year, and not because of the laying of the pipeline. And, since the levees on this land were knocked down and the land was prepared for raising beans or wheat in 1968, then for that reason, and regardless of whether a pipeline was constructed in 1967, it will be necessary for plaintiffs to relevel all of the same land before they again will be able to plant it to rice. The construction of the pipeline, therefore, did not cause or compel plaintiffs to relevel these five tracts of land.
One of the six tracts of land traversed by the pipeline was planted to rice during the 1968 crop season. That tract comprised a total of 65.6 acres. Plaintiff Edmond LeDoux testified that this tract was leveled in the latter part of 1966 or 1967, and that it was planted to rice during the 1967 crop season. The pipeline was constructed about the middle of that year. LeDoux stated that after the pipeline had been laid he and his brother tried to plant rice on the same tract the following year, that is during the 1968 crop season, without releveling the entire tract, but that “it didn’t work,” and that they then releveled the entire 65.6 acre tract before planting and raising rice on it that year. It was stipulated that Jack S. LeDoux, the other plaintiff, would have testified to the same effect if called as a witness.
The testimony of plaintiffs was supported by that of six other witnesses, including three farmers, an earth moving contractor, a county agent and a civil engineer, all of whom expressed the opinion that because of the construction of the pipeline across plaintiffs’ property it was impossible to restore the right of way to its former condition and that it would be necessary for plaintiffs to relevel the entirety of each of the affected tracts before they could be planted to rice.
Defendant called as one of its witnesses Mr. David R. Black, who had been an assistant professor of Agriculture at Louisiana State University, but is now engaged in business as an independent consultant in agricultural matters and as an appraiser of farmlands and crops. Mr. Black made a survey of a part of plaintiffs’ property and he concluded that the laying of the pipeline did not create a need for land leveling outside the area included in the right of way. He conceded that in every instance it is necessary to relevel the land within the confines of the right of way after a pipeline is constructed, but he stated that this *175 can be done and that the land within the right of way can be restored to its former condition. He testified that when the land in the right of way is restored to its former level and condition, the entire field then is in the same condition for farming rice after it is restored as it was before.
Mr. Black supervised such a procedure on a rice farm owned by Edwin Duhon and Amson Duhon, through which farm a pipeline had been laid. The procedure followed there consisted of releveling the land within the right of way only, the releveling being done by the farmers themselves, with their own farming equipment. Mr. Black kept records as to the crop yield from that field and he compared the yield of rice from that field after this operation with the yields in prior years. Photographs and color movies were taken of the entire operation, and these photographs, with statistical data as to yields, were filed in evidence. This photographic evidence, with Dr. Black’s testimony, showed that the pipeline right of way on the Duhon farm was releveled and restored to its former level and condition within a period of a few hours, that it was not necessary to re-level the acreage outside the right of way, and that there was no appreciable difference in the yield from the entire field after this operation was performed as compared to its yields in prior years.
The testimony of Mr. Edwin Duhon, one of the farmers on whose land this experiment was conducted, supports that of Mr. Black. Mr. Duhon stated further that after this was done, he then releveled and restored other rights of way through which pipelines had been laid, within less time and at less expense than was required in the first instance, and that in each such case it was not necessary to relevel any part of the land which was outside the right of way. He also testified that on two prior occasions pipelines were constructed across his property, that after that construction he releveled only that part of the land which was within the right of way, and that no other releveling was required. Mr. Duhon thus is of the firm opinion that the laying of a pipeline across a rice farm does not make it necessary to relevel the remainder of the farm outside the right of way.
It was stipulated that Amson Duhon would testify substantially to the same effect as his brother did if called as a witness.
The trial judge, relying on Texas Gas Transmission Corporation v. Klumpp, 137 So.2d 123 (La.App.3d Cir.1962), concluded that “once a pipeline traverses a field where rice is or is to be grown, cutting levees which are necessary to hold water upon the growing crops, that it is necessary to relevel the entire tract before water can be satisfactorily contained at the level necessary to the growing of the rice.” Based on that conclusion he awarded plaintiffs the cost of releveling the entirety of all six tracts of land traversed by the pipeline.
The evidence in the Klumpp case established that the land within the pipeline right of way could not be restored to its former level and condition, and that the construction of the pipeline thus made it necessary for the landowner to relevel his entire field before he could replant it to rice. The land was used for no purpose other than for raising rice, and there was no showing that the landowner would have had to relevel his land in any event, regardless of whether a pipeline was or was not constructed across it.
We did not hold in the Klumpp case that in every instance where a pipeline is constructed across a rice farm the entire farm must be releveled. We were aware in that case, and we specifically hold here, that each case must be determined upon its own facts. In a case such as this, when the landowner claims that the construction of a pipeline across his rice land made it necessary for him to relevel the entire farm, the proof that the laying of the pipeline actually caused or brought about the necessity of releveling the entire *176 field rests upon the landowner. It is apparent from the testimony of Mr. Black and of Messrs. Edwin and Amson Duhon that in some instances the area within the right of way can be restored to its former level and condition, and that the laying of a pipeline thus will not necessitate the re-leveling of the entire farm before it can be replanted to rice.
In the instant suit plaintiffs have failed to show that the construction of the pipeline caused them to relevel the five tracts of land which were planted to soybeans or wheat in 1968. Plaintiffs had to relevel those tracts to rotate their crops, whether the pipeline was or was not constructed across them. We cannot agree with the conclusion of the trial judge, therefore, that plaintiffs are entitled to recover the cost of releveling the five tracts which were planted to soybeans or wheat in 1968.
The evidence as to whether the construction of the pipeline made it necessary for plaintiffs to relevel the 65.6 acre tract which was planted to rice in 1968 is conflicting. As already noted, plaintiffs testified that they tried to plant rice on that tract in 1968 without releveling, but that “it didn’t work,” and they produced a number of witnesses who felt that the laying of the pipeline made it necessary to relevel that entire tract. On the other hand, an expert who examined plaintiffs’ land and conducted experiments in releveling rice lands, testified that the construction of the pipeline did not make it necessary to relev-el the entire tract. His conclusions were supported by the testimony of two rice farmers who also had had actual experience in releveling rice lands after the laying of a pipeline. The trial judge, after considering these conflicting views, accepted the testimony of plaintiffs and the witnesses called by them.
The trial judge’s findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App.3d Cir.1966).
In this suit, we cannot say that the trial judge erred in arriving at the factual conclusion, from the evidence presented, that the construction of the pipeline caused or made it necessary for plaintiffs to re-level the entirety of the 65.6 acre tract of land before that particular tract could be replanted to rice. We will affirm that portion of the judgment appealed from, therefore, which awards to plaintiffs the costs of releveling that tract.
The evidence shows that the cost of re-leveling rice land ranges from $20.00 to $50.00 per acre. Plaintiffs claim $25.00 per acre, and the trial judge concluded that it would cost that amount per acre to re-level the land. We agree. Plaintiffs thus are entitled to recover $25.00 per acre for 65.6 acres, which amounts to $1640.00.
For the reasons herein set out, the judgment appealed from is amended by reducing the amount of the award from $5657.50 to the sum of $1640.00. In all other respects the judgment is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.